IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SAFETY NATIONAL CASUALTY INSURANCE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:04CV00619 |
| CITY OF BURLINGTON; KEY RISK MANAGEMENT SERVICES, INC.; COREGIS INSURANCE COMPANY; JOHN JUNIOR WILLIAMS AND JOAN WILLIAMS. | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

BEATY, District Judge.

Plaintiff Safety National Casualty Insurance Corporation ("Safety National") brings the present declaratory judgment action pursuant to 28 U.S.C. § 2201 seeking a determination of the rights of the parties with regard to a workers' compensation lien and possible waiver of that lien under the North Carolina Workers' Compensation Act. Defendants John Junior Williams and Joan Williams have filed a Motion to Dismiss [Document #31] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) based on their contention that the North Carolina Industrial Commission has exclusive original jurisdiction over the claims brought against them in this case. After considering the issues involved in this case and the issues raised by the Motion to Dismiss, the Court in its discretion declines to exercise jurisdiction over this declaratory judgment action. Therefore, all of the pending claims in this case will be DISMISSED WITHOUT PREJUDICE.

I.  FACTUAL BACKGROUND

On March 24, 2000, Defendant John Junior Williams ("Williams") was employed by the City of Burlington ("the City") as an equipment operator, and was a passenger in a truck that was owned by the City. Williams was injured in the course and scope of his employment when the truck in which he was riding was struck by a vehicle driven by Edwin Gray Abercrombie and owned by Jacqueline Abercrombie ("the Abercrombie vehicle"). Williams was seriously hurt, and was determined to be entitled to benefits under the North Carolina Workers' Compensation Act (the "Workers' Compensation Act").

On the date of the collision, the City was a qualified self-insurer under the Workers' Compensation Act. Defendant Key Risk Management Services, Inc. ("Key Risk") served as third-party administrator of any workers' compensation claims brought against the City. Plaintiff Safety National was the excess workers' compensation carrier for the City at the time of the collision. Under this arrangement, the City was self-insured for workers' compensation claims up to $250,000. For those claims paid by the City up to this self-insured limit, Key Risk acted as the third-party administrator of those claims. For workers' compensation claims above $250,000, the policy issued to the City by Safety National afforded coverage to the City for any excess workers' compensation liability.

Pursuant to this arrangement, and given the seriousness of his injuries, Williams has continued to receive workers' compensation benefits from the City as administered by Key Risk. The City has now paid workers' compensation benefits to Williams in an amount approaching

2

its self-insured retention level of $250,000. The City has therefore notified Safety National that it intends to seek coverage under Safety National's excess workers' compensation policy for amounts that the City has paid or will pay above the $250,000 self-insured retention level.

In addition to these workers' compensation benefits, Williams and his wife, Defendant Joan Williams, (collectively, the "Williams Defendants") also pursued a third-party claim for personal injury against the driver and owner of the Abercrombie vehicle. The liability insurance carrier for the Abercrombie vehicle tendered its policy limits of $25,000 to settle all claims against its insureds. By agreement with the City and Key Risk, the Williams Defendants paid one-third of the settlement received from the Abercrombie liability policy to the City in partial reimbursement of the workers' compensation benefits the City had previously paid to John Williams.

After the Williams Defendants received the proceeds from the Abercrombie liability policy and paid the City one-third of those proceeds, the Williams Defendants then pursued a claim for further recovery for personal injury under the Underinsured Motorist ("UIM") policy that covered the truck in which Williams was a passenger. Defendant Corgeis Insurance Company ("Corgeis") was the insurance carrier for a policy issued to the City which covered the operation, maintenance, and use of motor vehicles owned by the City, including the truck in which Williams was a passenger. This policy issued by Corgeis included certain UIM coverage. On or about August 3, 2001, the Williams Defendants entered into a Settlement Agreement and

3

Release with Coregis. As a result of the Settlement, the Williams Defendants were paid $850,000 in final settlement of all claims against the City's UIM coverage.

The parties dispute whether and how Key Risk and the City were involved in the settlement between the Williams Defendants and Coregis. The Williams Defendants contend that both Key Risk and the City consented to and authorized the settlement and gave complete release, relinquishment, and waiver of any workers' compensation lien against amounts received by the Williams Defendants from Coregis. Both Key Risk and the City deny that they waived any possible workers' compensation liens. The City contends that if Key Risk is found to have waived the liens, it was without the City's authorization. Key Risk contends that if it is found to have waived the workers' compensation liens, it was acting with the express permission of the City.

In the present suit, Safety National essentially seeks a declaratory judgment with respect to two categories of claims. *First*, Safety National alleges that, in violation of the North Carolina Workers' Compensation Act, the Williams Defendants and Coregis did not properly recognize or honor its workers' compensation lien.[1] As a result, Safety National seeks a declaration that it is entitled to a workers' compensation lien against the settlement proceeds that Williams

---

[1] This claim by Safety National is brought pursuant to the provisions of the North Carolina Workers' Compensation Act, which creates a lien in favor of the employer (here, the City) or its insurance carrier (Safety National) against the proceeds of a settlement received by an employee (Williams) from a third party (Coregis), to the extent necessary to reimburse the employer or its insurance carrier for workers' compensation benefits paid to the employee pursuant to an Industrial Commission award for the same injury. See N.C. Gen. Stat. § 97-10.2(f)-(h).

received from Coregis. The City also filed a similar cross-claim against Coregis and the Williams Defendants, based on its assertion that it is likewise entitled to a workers' compensation lien on any third-party settlement proceeds. Thus, Safety National and the City seek to enforce a workers' compensation lien against the settlement proceeds received by the Williams Defendants from Coregis. In response to this claim and cross-claim, the Williams Defendants contend that, *inter alia*, there is no workers' compensation lien in favor of Safety National or the City against the settlement proceeds, that any lien was waived or relinquished by Key Risk, and that this lien determination must be brought before the North Carolina Industrial Commission (the "Industrial Commission"). This first set of claims by Safety National and the City will be referred to herein as the "lien claims."

*Second*, Safety National brings a separate category of claims in which it contends that if Key Risk or the City waived or released the lien, such waiver or release was done without the consent of Safety National, and was a breach of the insuring agreement between Safety National and the City. Safety National contends that such a breach would void the coverage it would have provided to the City under its excess coverage policy, and therefore would relieve Safety National of any obligation to pay benefits under the policy to or on behalf of the City. In response, the City filed a cross-claim against Key Risk, alleging that Key Risk's counsel negligently sent a letter to Williams purporting to waive all subrogation rights against the UIM coverage. The City also asserted a counterclaim against Safety National alleging that the contractual agreement between the City and Safety National mandated that the City use Key

Risk as a third-party administrator. The City contends that if Key Risk is found to have waived any possible workers' compensation lien, Safety National is still liable to the City under their agreement because Safety National mandated that Key Risk be used as third-party administrator. These claims will be referred to herein as the "breach of contract" claims.

The Williams Defendants have now filed the present Motion to Dismiss [Document #31] pursuant to Rules 12(b)(1) and 12(b)(6) based on their contention that the lien claims must be brought before the North Carolina Industrial Commission. The Williams Defendants concede that there is complete diversity of the parties and that the $75,000 amount in controversy is satisfied, as required to establish federal diversity jurisdiction. See 28 U.S.C. § 1332(a). However, the Williams Defendants contend that this Court nevertheless lacks jurisdiction over the lien claims, because the North Carolina Industrial Commission has exclusive jurisdiction over those claims, and as such, those claims are not valid state law claims that could be brought in state or federal court. In considering the issues raised in the Motion to Dismiss, the Court will first determine whether the exercise of jurisdiction is appropriate in this case under the Declaratory Judgment Act, as discussed below.

II. JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT

    A.    Federal Declaratory Judgment Act

As previously noted, Plaintiff Safety National brings its claims pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2210. The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction," a Federal district court "may

6

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288, 115 S. Ct. 2137, 2143, 1323 L. Ed. 2d 214 (1995). Thus, the Declaratory Judgment Act "does not impose a mandatory obligation upon the federal courts to make such declarations of rights. Rather, a district court's decision to entertain a claim for declaratory relief is discretionary." Aetna Cas. & Sur. Co. v. Ind-Com Electric Co., 139 F.3d 419, 421 (4th Cir. 1998).

In exercising this discretion, the Fourth Circuit has noted that a declaratory judgment action is appropriate "'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)). The Declaratory Judgment Act "should not be used 'to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.'" Id. at 256-57 (quoting Quarles, 92 F.2d at 325). The Court's discretion is to be guided by these criteria and by considerations of federalism, efficiency, and comity, including consideration of the following factors: "(i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state

7

courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law'; and (iv) whether the declaratory judgment action is being used merely as a device for 'procedural fencing' – that is, 'to provide another forum in a race for res judicata' or 'to achieve a federal hearing in a case otherwise not removable.'" Centennial Life, 88 F.3d at 257 (citing Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994)) (internal brackets omitted). The Court will consider each of these factors in turn as it relates to the present case.

B. Application of Factors Guiding the Court's Discretion

1. Nature of State Interests

In the present case, the Court notes first that this case involves complex and highly regulated state law issues under the state Workers' Compensation Act, and North Carolina would have a significant interest in having these issues decided in its state courts. Specifically, this case involves the determination of the existence and waiver of workers' compensation liens under North Carolina General Statute § 97-10.2(j). As previously discussed, the "lien claims" in this case involve assertion of a workers' compensation lien over the proceeds the Williams Defendants received from Coregis in the settlement of the UIM claim. As such, these claims involve a determination of rights and benefits between an employee (Williams) and his employer (the City and its workers' compensation insurer, Safety National). The claims could affect a

8

workers' compensation award within the jurisdiction of the state Industrial Commission. In addition, the dispute involves a lien specifically created by the Workers' Compensation Act, N.C. Gen. Stat. § 97-10.2(f)-(h), as well as the alleged failure of the employee to follow the provisions of another section of the Workers' Compensation Act, N.C. Gen. Stat. § 97-10.2(j). Thus, determination of these claims would involve resolution of significant issues under the state Workers' Compensation Act.

The state interest in this area is so significant that state law requires that disputes arising under the state Workers' Compensation Act must be decided by the Industrial Commission, an administrative agency of the state. The exclusivity provision in the North Carolina Workers' Compensation Act, N.C. Gen. Stat. § 97-91, provides that

> All questions arising under this Article if not settled by agreements of the parties interested therein, with the approval of the Commission, shall be determined by the Commission, except as otherwise provided herein.

N.C. Gen. Stat. § 97-91 (2003). Thus, unless otherwise specified in the Workers' Compensation Act, disputes "arising under" the Act must be resolved by the Industrial Commission. See N.C. Gen. Stat. § 97-83 (specifying that if any dispute arises under the Act, either the employer or employee may apply to the Commission for a hearing in regard to the matters at issue); Cox v. Pitt County Transp. Co., 259 N.C. 38, 129 S.E.2d 589 (1963) (dismissing state claims as within the exclusive jurisdiction of the Industrial Commission).

The Workers' Compensation Act recognizes a limited exception to the exclusivity provisions in certain circumstances. Specifically, N.C. Gen. Stat. §97-10.2(j) provides that

9

> Notwithstanding any other subsection in this section . . . in the event that a settlement has been agreed upon by the employee and the third party, either party may apply to the resident superior court judge of the county in which the cause of action arose . . . to determine the subrogation amount. . . . If the matter is pending in the federal district court such determination may be made by a federal district court judge of that division.

N.C. Gen. Stat. § 97-10.2(j)(2005). This section allows courts to determine subrogation amounts in the event of a settlement of a third-party claim where the third-party claim is pending before that court, or where either the employee or third party apply to the court for determination of the subrogation amount. See Johnson v. Southern Industrial Contractors, Inc., 347 N.C. 530, 535, 495 S.E.2d 356, 359 (1998) (holding that "the overall procedure for determining the respective rights to compensation and subrogation between the employee, the employer and any third-party tort-feasor . . . is entirely the province of the [Industrial] Commission except in the limited circumstance set forth in subsection (j)"). However, § 97-10.2(j) authorizes such an action by "either party" to the settlement, that is, either the employee or the third party. There is no provision in § 97-10.2(j) recognizing a separate cause of action by an *employer* to determine the subrogation amount, and no North Carolina state court cases have addressed the ability of an *employer* to bring a separate cause of action in state court pursuant to this provision. Thus, there appears to be an unresolved question of state law in the present case as to whether North Carolina state courts would allow Safety National or the City to assert their "lien claims" in court as a separate cause of action, or would instead consider the "lien claims" in the present case to be within the exclusive jurisdiction of the Industrial Commission.

10

Moreover, the Court also notes that the interplay between underinsured motorist awards and workers' compensation liens is an area of evolving state law, which has been the subject of recent legislation and considerable attention in the state courts. See N.C. Gen. Stat. § 20-279.21; McMillian v. North Carolina Farm Bureau Mut. Ins. Co., 347 N.C. 560, 565, 495 S.E.2d 352, 354-55 (1998); Levasseur v. Lowery, 139 N.C. App. 235, 241-42, 533 S.E.2d 511, 515 (2000), aff'd, 353 N.C. 358, 543 S.E.2d 476 (2001); Austin v. Midgett, 159 N.C. App. 416, 420-21, 583 S.E.2d 405, 408-09 (2003), amended at 166 N.C. App. 740, 603 S.E.2d 855 (2004); Walker v. Penn National Security Ins. Co., 168 N.C. App. 555, 608 S.E.2d 107 (2005). North Carolina has a significant interest in having its state courts make determinations and interpretations of this area of the law in the first instance. There are no federal law claims, defenses, or issues raised in this case; rather, all of the claims involve interpretation of complex, evolving state laws that are the subject of significant state legislation and attention, and which should be considered by state courts when appropriate. Therefore, this Court concludes that North Carolina has a significant interest in having these issues, particularly the workers' compensation lien claims, decided by North Carolina courts. Cf. Mitcheson v. Harris, 955 F.2d 235, 238 (4th Cir. 1992) (holding in a declaratory judgment action that "[a]bsent a strong countervailing federal interest, the federal court here should not elbow its way into this controversy to render what may be an 'uncertain and ephemeral' interpretation of state law"); Maryland Cas. Co. v. Boyle Const. Co., 123 F.2d 558 (4th Cir. 1941) (upholding dismissal of declaratory judgment action as "a sound exercise of

11

discretion" where the case involved issues determinable by the South Carolina Industrial Commission).

2.  More Efficient Resolution of Issues in State Proceedings

Second, the Court notes that state proceedings would be able to more efficiently address all of the various state issues raised here. In this regard, the Court notes first that it appears that previous proceedings regarding John Williams' benefits have occurred before the Industrial Commission, and the Industrial Commission has continuing jurisdiction as to at least some of the issues raised in this case. See also Ind-Com Electric, 139 F.3d at 423 (noting that "[t]here is no requirement that a parallel proceeding be pending in state court before a federal court should decline to exercise jurisdiction over a declaratory judgment action"). In addition, any appeals of any Industrial Commission determination would be to North Carolina courts, not this Court. See N.C. Gen. Stat. § 97-86. Finally, the Court also notes that where a case raises both Industrial Commission issues and common law issues together, state courts have adopted a process for staying the common law issues while remanding certain portions of the case to the Industrial Commission. See, e.g., North Carolina Chiropractic Assoc. v. Aetna Cas. & Sur. Co., 89 N.C. App. 1, 9-10, 365 S.E.2d 312, 316-17 (1988) (holding that under the doctrine of primary jurisdiction, action would be stayed pending a determination of the underlying workers' compensation issues by the Industrial Commission).

12

Thus, the state courts can coordinate proceedings with respect to the common law claims, such as the "breach of contract" claims in this case,[2] in coordination with the claims that may need to be referred to the Industrial Commission and any subsequent appeals from an Industrial Commission determination. This Court is reluctant to retain jurisdiction over pieces of the case, while other pieces of the case require determination before the Industrial Commission. Cf. Mitcheson, 955 F.2d at 239 (noting that "it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to try a controversy by piecemeal, or to try particular issues without settling the entire controversy" (internal quotations omitted)). In addition, even if this Court exercised jurisdiction over all of the claims together in this case, any determination in this Court could affect a previous Industrial Commission award between these parties, and could result in additional proceedings before the

---

[2] With respect to the "breach of contract" claims brought between the City, its insurer (Safety National), and its third-party administrator (Key Risk), those claims relate to the existence of insurance coverage between the City and Safety National, the potential breach of the insurance agreement by the City, and the effect of Key Risk's actions on the insurance coverage. The claims are brought pursuant to North Carolina common law, not the Workers' Compensation Act. As such, these claims fall squarely within the provisions of the North Carolina Supreme Court's decision in Clark v. Gastonia Ice Cream Co., 261 N.C. 234, 134 S.E.2d 354 (1964), recognizing state court jurisdiction where the "insured and insurer have some dispute entirely between themselves about the validity or coverage of the policy or the sharing of the admitted liability." Clark, 261 N.C. at 240, 134 S.E.2d at 359. This Court could therefore exercise diversity jurisdiction over the "breach of contract" claims in the present case. However, these claims are also brought pursuant to the Declaratory Judgment Act, and the Court therefore has discretion in exercising jurisdiction over those breach of contract claims. In this case, given the significant state law issues discussed above and in the interest of avoiding piecemeal litigation, as discussed above, the Court will decline to exercise discretionary jurisdiction over the breach of contract claims, even though diversity jurisdiction would otherwise exist with respect to those claims.

13

Industrial Commission. This would certainly result in "piecemeal" considerations, and would not settle the entire controversy. Therefore, federal assertion of jurisdiction in this dispute would only complicate the state issues and is inefficient.

        3.      "Entanglement" Between State and Federal Court Systems

Third, the Court notes that for many of the same reasons, assertion of jurisdiction would result in unnecessary entanglement between the federal and state systems. Any determination by this Court could interfere with and affect an award of benefits by the Industrial Commission, and could result in inconsistent legal and factual conclusions. In addition, any reference of portions of this case to the Industrial Commission could result in parallel proceedings, with this Court becoming unnecessarily involved in Industrial Commission proceedings. Cf. Mitcheson, 955 F.2d at 239 (noting that in promoting comity between state and federal courts, "[a]n important element in fostering that spirit of cooperation and respect must be a reluctance on the part of federal courts to entertain a declaratory action that could result in entanglement between the two court systems"); Mutual Benefit Ins. Co. v. Lorence, 189 F. Supp. 2d 298 (D. Md. 2002) (declining to exercise jurisdiction in declaratory judgment action where case involved questions properly before Maryland Insurance Commissioner based on "comprehensive administrative mechanism" since federal court involvement would "result in unnecessary entanglement"), aff'd, 59 Fed. Appx. 595 (4th Cir. 2003). This Court recognizes that in some circumstances, issues regarding workers' compensation liens may be properly raised in this Court, such as where a lien is raised as part of a suit already pending before this Court by an employee against a third party.

14

See N.C. Gen. Stat. § 97-10.2(j). However, in the present case where the Court's exercise of jurisdiction is discretionary and where North Carolina state courts would potentially view the lien claims as within the exclusive jurisdiction of the Industrial Commission, these concerns would counsel against this Court's assertion of jurisdiction.

4. Use of Declaratory Judgment Device for Procedural Purposes

Finally, the Court notes that there is no evidence that Safety National has engaged in "procedural fencing" in this case. However, the Court also notes that 28 U.S.C. § 1445(c) provides that "[a] civil action in any State court arising under the workmen's compensation laws of such state may not be *removed* to any district court of the United States." (emphasis added). Therefore, if this claim had been brought by any of the parties in state court, the "lien claims," which arise under the Workers' Compensation Act, could not be removed to federal court. The Supreme Court has interpreted this statute to allow federal jurisdiction over cases arising under state workers' compensation laws when they are originally brought in federal court rather than removed to federal court, if the case could be brought in state court and otherwise fulfills the other requirements of diversity jurisdiction in 28 U.S.C. § 1332. See Horton v. Liberty Mutual Ins. Co., 367 U.S. 348, 353, 81 S. Ct. 1570, 1573, 6 L. Ed. 2d 890 (1961) (allowing a workers' compensation claim to be brought in federal court because Texas law allowed such a suit to be brought in Texas state court). However, the use of the declaratory judgment device in the present case would allow claims to be brought in federal court which were not otherwise removable. Such a use of the Declaratory Judgment Act could undermine the purpose of 28

15

U.S.C. § 1445(c), which was enacted to reduce the burden on the federal dockets by prohibiting removal of cases arising under state workers' compensation laws. Cf. Ryder Servs. Corp. v. Savage, 945 F. Supp. 232, 235 (N.D. Ala. 1996) (declining to exercise jurisdiction in declaratory judgment action in workers' compensation case because the underlying state claim would be non-removable under 28 U.S.C. § 1445(c)). Therefore, the Court is not inclined to exercise discretionary jurisdiction pursuant to the Declaratory Judgment Act to provide a federal forum that would not otherwise exist, particularly given the state interests and issues discussed above.

For all of these reasons, the Court in its discretion concludes that all of the pending claims are best considered in state court or before the North Carolina Industrial Commission. Therefore, the Court need not resolve the state law issues raised in the Williams Defendants' Motion to Dismiss [Document #31]. Cf. Wilton, 515 U.S. at 288, 115 S. Ct. at 2143 ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action."). Therefore, the pending claims in this case will be dismissed without prejudice to the parties pursuing their claims before the Industrial Commission or in state court, as appropriate.

III. CONCLUSION

For the reasons discussed above, the Court declines to exercise discretionary jurisdiction in this case, and all of the claims, cross-claims, and counterclaims are DISMISSED WITHOUT

16

PREJUDICE. An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 17th day of February, 2006.

_____
United States District Judge